## CLARK *v.* UNION MUTUAL FIRE-INSURANCE COMPANY.

Whether there has been a misrepresentation or concealment on the part of a person procuring insurance upon his property, in relation to facts material to the risk, is proper matter of inquiry for the jury, and is for them to determine.

Although the by-laws of an insurance company provide that the person taking the survey of the property shall be the agent of the applicant, yet such person is still considered the agent of the company also, and as such the company are bound by his acts.

Clark *v.* Insurance Company.

THIS cause came on for trial at the February term, 1860, in this county, when, upon the facts proved, the following case was made:

The action was assumpsit, brought by Jonathan Clark against the Union Mutual Fire-Insurance Company, on a policy of insurance dated August 1, 1853, insuring, in the second class of the defendant company, the plaintiff's dwelling-house, ell, and out-building, situated in Manchester, New-Hampshire; the policy, application, charter and by-laws being part of the case.

The defence was misrepresentation and concealment by the plaintiff of facts material to the risk, concerning the situation and occupancy of the buildings insured, and the surrounding buildings. The application, signed by the plaintiff, contained the following: " The applicant will be holden for the correctness of his application, by answering the following interrogatories:

" Relative position as to other buildings; distance; if less than six rods, and for what purpose occupied.

" East, eight feet, a dwelling-house; east, thirty-two feet, another house. West, and nearly adjoining, is a similar tenement; next west a street. North of out-building a street, and across it buildings. South, street about sixty feet."

" Who owns and occupies the buildings, and for what purpose?

" The applicant owns; as dwellings by tenants."

" And I hereby covenant and agree to and with said company, that the foregoing is a correct description of the buildings and property requested to be insured, so far as regards the risk on the same; and, in case of insurance, I hold myself bound by the act of incorporation and the by-laws annexed to my policy."

It appeared that before, at the time, and after the application was signed and the insurance effected, the build-

ings easterly of the property insured were a dwelling-house, eight feet distant, and a livery stable, in which about twenty-three horses were kept, twenty-five feet distant; that the buildings westerly were a dwelling-house nearly adjoining, a paint shop, thirty-six by twenty-five feet, two stories high, both stories being used and occupied for painting by from twelve to fifteen men, forty-five feet distant; and that forty-five feet distant from the property insured there was a carpenter's shop, two stories high, both stories being used by from six to eight men, for carpenters' and joiners' work; and that the outbuilding insured was occupied as a shop, in both stories, by from one to ten men, for making shoes.

The defendants requested the court to instruct the jury that the existence of the shoe-shop, livery stable, paint-shop and carpenters' shop, taken in connection with the representations in the application, and articles 8 and 17 of the defendants' by-laws, was, as matter of law, material to the risk.

The court refused so to instruct the jury, but did instruct them that the evidence concerning the shoe-shop, the livery stable, the paint-shop and carpenters' shop, was for them to consider upon the question of mis-statement or concealment by the plaintiff, in his application, of facts material to the risk, and that whether said shops and stable materially increased the risk, was a question of fact for them to determine.

The plaintiff testified that he applied for insurance to one Lancaster, an agent of the defendants, at Concord; told him that the out-building was occupied as a shoe-shop; that he could not particularly describe his own or the surrounding buildings; that he agreed to pay Lancaster for going to Manchester and making the necessary survey; signed a blank application, which he supposed was afterward filled out by Lancaster, and that he received his policy by mail. The answers to the questions in the

application are in the hand-writing of Lancaster, who signed the application as surveyor.

The court instructed the jury, that if Lancaster had knowledge of the facts in question, material to the risk, the defendants were chargeable with the same knowledge, and were estopped to set up a misrepresentation or concealment of such facts as a defence; that Lancaster need not be proved to have had personal knowledge of such facts from his acquaintance with or examination of the premises, but that knowledge derived from any source would be sufficient, and that if they found such knowledge they might return a verdict for the plaintiff, notwithstanding article 17 of the defendants' by-laws.

Articles 8 and 17 of the by-laws were as follows :

ARTICLE 8. The property insured by said Company shall be divided into four classes, viz. :

The *First Class* shall consist of farm houses, barns and their contents, and any other property not deemed more hazardous, and shall be insured for a term not exceeding six years.

The *Second Class* shall consist of dwelling-houses, barns and their contents, in towns and villages, and shall be insured for a term not exceeding six years.

The *Third Class* shall consist of stores, merchandise, public houses, public boarding-houses, churches, academies, school-houses, saddle, harness and trunk-makers' shops, tanneries (where no steam is used), bridges, bookbinderies, printing-offices, tin-plate workers, hatters, shoe-shops and shoe-stock, and any other property not deemed by the directors more hazardous, and shall be insured for a term not exceeding three years.

The *Fourth Class* shall consist of machine shops, iron foundries, cabinet, carpenters', coopers', carvers', turners', wheelwrights', and wood and iron workers' shops generally; boat-builders', musical instrument makers' and painters' shops and livery-stables; bakers', tallow chand-

lers', soap-boilers' and sail-makers' shops or buildings; saw, grist, flour, clapboard, shingle, lath, sugar-box, and fulling-mills; dye houses, tanneries (where steam is used); oil, comb, button, chair and last factories; cotton, woolen, worsted, silk and linen factories, wood, standing or cut, builders' risks, iron machine shops and iron foundries, where steam power is used, and of any other property that the directors may deem proper to include in this class, and shall be insured for a term not exceeding three years.

ARTICLE 17. The applicant for insurance shall make a true representation of the situation of the property on which he requests insurance, so far as concerns the risk and the value thereof, and of his title and interest therein. And in case the application is made through an agent, the applicant shall be held liable for the representation of such agent.

A verdict being returned against the defendants, they moved to set aside the same, for error in the foregoing rulings and instructions.

*George & Foster*, for the defendants, referred to the following authorities to sustain their points of defence: *Boardman* v. *New-Hampshire M. F. I. Co.*, 20 N. H. 551; *Marshall* v. *Columbian M. F. I. Co.*, 27 N. H. 157; *Lowell* v. *Middlesex M. F. I. Co.*, 8 Cush. 127; *Jennings* v. *Chenango M. F. I. Co.*, 2 Den. 75; *Gates* v. *Madison Co. M. F. I. Co.*, 3 Barb. 73; and the charter and by-laws of the company, and the policy of the plaintiff.

*W. E. Chandler*, on the same side, also cited and commented upon the following cases: *Patten* v. *Merchants' and Farmers' M. F. I. Co.*, 38 N. H. 338; *Campbell* v. *Merchants' and Farmers' Ins. Co.*, 37 N. H. 35.

*Kittredge & Bellows*, for the plaintiff, referred to 4 Barb. 624; 9 Barb. 191; 2 Coms. 43; 6 Seld. 469; 2 Ohio 452;

20 N. H. 557, and cases there cited; Ang. & Am. on Corp., secs. 335, 470; *Campbell* v. *Merchants' and Farmers' Ins. Co.*, 37 N. H. 35; 11 Barb. 624; Article 17 of Company's by-laws.

NESMITH, J.* The leading and important question in this case is, whether the plaintiff has been guilty of such misrepresentation or concealment, in procuring his insurance, as will avoid his policy.

"Misrepresentation, according to the law of insurance, is the statement of something, as fact, which is untrue, and which the assured states knowing it to be untrue, and with the intent to deceive; or which he states positively as true, not knowing it to be true, and which has a tendency to mislead; such fact being in either case material to the risk." "Concealment is the designed and intentional withholding of any fact, material to the risk, which the assured in honesty and good faith ought to communicate; and any fact is material, the knowledge or ignorance of which would naturally influence an insurer in making the contract at all, or in estimating the degree and character of the risk, or in fixing the rate of insurance." "All representations which enter into the essence of the contract, and which go to lay the foundation of it; whatever would cause the company to accept or reject the application, should be truly stated." *Locke* v. *North-American Ins. Co.*, 13 Mass. 97; *Houghton* v. *Manf. Ins. Co.*, 8 Met. 114.

The materiality of a representation made, or a fact concealed by the insured, is a question for the jury to determine. *Boardman* v. *New-Hampshire Ins. Co.*, 20 N. H. 551, and cases there cited; *Daniels* v. *Hudson River Ins. Co.*, 12 Cush. 416.

The distinction between a warranty and a representation, as made by the insured, is well considered in this

---

* BELLOWS, J., did not sit.

Clark v. Insurance Company.

last case. Whatever also tends to increase the risk, is also a question of fact for the jury. *Gambell* v. *Merchants' and Farmers' Mut. Ins. Co.*, 12 Cush. 169.

There are cases which hold that, where inquiries are not put by the company or its agents, as to the title and situation of the property insured, and nothing appears to show that fraud was designed by the insured, a suppression of facts will not make void the policy. *Fletcher* v. *Commonwealth Ins. Co.*, 18 Pick. 419 ; *Green* v. *Merchants' Ins. Co.*, 10 Pick. 402.

The case before us finds that the plaintiff applied to Lancaster, the agent of the defendants, for the insurance of his property at Manchester. The parties were then at Concord. The plaintiff informed Lancaster that his out-building was occupied as a shoe-shop ; that he could not particularly describe his own or the surrounding buildings ; that he agreed to pay Lancaster for going to Manchester, to make the necessary survey. The plaintiff signed the blank application, which afterward appeared to have been filled out by Lancaster ; Lancaster procured a policy, founded upon said application so made, and forwarded it by mail to the plaintiff, and the plaintiff received it, relying upon it as correct in all particulars.

In *Marshall* v. *Columbian Ins. Co.*, 27 N. H. 157, it was held, that where the application was taken by the agent of the company, and he is aware of the facts material to the risk, but which are not set forth in the application, the company will be charged with knowledge, and that, under such circumstances, an unintentional concealment or misrepresentation will not make void the policy.

Our statute law confirms the same principle, that applications, taken by the agents of the companies in this State, shall not be void by reason of any error, mistake or misrepresentation, unless it shall appear to have been intentionally and fraudulently made. Laws of 1855, ch. 1662, sec. 6. The evident object and intent of this statute

seems to have been that our insurance companies should be bound by the principles of good faith and fair dealing with their insured, and should not be permitted to repudiate the acts and contracts of their own authorized agents, but should be bound by them, except in cases of manifest fraud and imposition.

Although the agent Lancaster may have received a special trust by virtue of his engagements with the plaintiff, yet we think this did not absolve him from his responsibility to the company that employed him. In this case the directors of the company receive from his hands the application of the plaintiff, as prepared by their agent, and it is accompanied by what purports to be a survey of the buildings, in writing. They examine these, determine upon the extent and nature of the risk, assign it to its appropriate class, graduate the amount thereof, and fill up the premium note, which is assumed to have been signed by the plaintiff in blank. The policy is made out, signed by the officers, and delivered to the plaintiff by the agent. Under the circumstances disclosed here attending this case, we see no room for imputing blame, or negligence, or fraud to the plaintiff. His only fault appears in placing confidence in the ability, experience and integrity of a trusted agent of the defendants. By the permission or express authority of the defendants, Lancaster was clothed with the power to take applications of insurance for their company. He was constantly employed to do for others what he undertook to do for the plaintiff, and with the defendant's knowledge and presumed assent. We see no reason, therefore, why those who best knew his capacity, or his want of it, should not bear the consequences of his negligent acts. Again, admitting the plaintiff and the defendants to stand on the ground of innocent persons, and one of them must suffer, through the force of the maxim of law, that, where one of two innocent persons must suffer by the fraud, negligence or

misconduct of a third, they who enabled that person so to act ought to be the sufferers.

Although the by-laws of an insurance company make the person taking the survey in its behalf the agent of the applicant, he is still the agent of the company also, and the company are bound by his acts. Ang. & Am. on Ins., sec. 470 ; 20 Barb. 468 ; *Masters* v. *Madison Co. Mut. Ins. Co.,* 11 Barb. 624.

Where an application for insurance was made by the agent of the company, who neglects to incorporate in it a fact essential to the validity of the policy, and which he has promised the applicant he would so incorporate, the company are estopped to set up such omission as a defence in an action on the policy. *Kelley* v. *Troy Fire Ins: Co.,* 3 Wis. 254.

The case of *Campbell* v. *Merchants' and Farmers' Ins. Co.,* 37 N. H. 35, sustains the principles of this case and the rulings of the judge who tried the same.

There must, therefore, be

*Judgment on the verdict.*