# CASES

IN

# THE SUPREME COURT

OF

# PENNSYLVANIA.

## Musselman's Estate.

A testator having provided by his will that " each child or grand-children (the children of a deceased child), shall receive as much as shall make it or them equal to that one of the seven which has received most," particular expressions that would stand in the way of this, shall be construed in subordination to it or be disregarded. Hence, the expression, " so much as at my death shall stand charged," shall not be so construed as to charge an advancement to one of his legatees, which had been repaid by the legatee to the testator before the date of the will, although such charge remained on his book at his death.

APPEAL from the decree of the orphans' court of *Cumberland* county.

Jacob Musselman the testator had several children, of whom Mary Spotswood was one. In his lifetime he kept a book in which he charged each of his children with all advancements made to them. In 1821, Lindsay Spotswood, the husband of Mary Spotswood, was likely to fail, and Jacob Musselman and he had a settlement of all accounts which existed between them, including a note due by Musselman to Spotswood and moneys advanced at different times by Musselman to Spotswood, with which he and his wife had not been charged as advancements, and also including all advancements which Jacob Musselman had made to his daughter Mary or her husband up to that time, amounting to 601 dollars 33 cents, upon which set-

V.—B

tlement there was a balance due by Lindsay Spotswood to Jacob Musselman of 193 dollars 31 cents, for which sum Spotswood gave his judgment to Musselman, upon which an execution was immediately issued and Spotswood's personal property was levied, sold and purchased by Jacob Musselman, who then gave it to his daughter Mary and charged her in the same book and in the same page of it with 75 pounds, the amount of the property purchased. After this time, and up to 1829, Musselman continued to make advancements to his daughter Mary with which he charged her in the same book and page, and never made any entry or memorandum that the advancements previously to 1821 had been settled, paid or satisfied in any way. On the 7th of March, 1829, Jacob Musselman made his last will and testament, as follows, to wit:

" In the name of God, amen, I Jacob Musselman of West Pennsborough township, in the county of Cumberland, and state of Pennsylvania, being desirous whilst in health and of a sound and disposing mind and memory, of making such arrangements as may be proper for the distribution and settlement of my estate after my death, and having often and seriously reflected on the subject, do now make, publish and declare this to be my last will and testament; and I do hereby revoke and annul any other will or wills, legacies or bequests, by me at any time heretofore made, that is to say : my executors hereinafter named shall, as soon after my decease as convenient, sell all my personal property excepting what is hereafter bequeathed to my wife, and collect all moneys owing to me, and shall pay my just debts and funeral expenses.

" In case my present wife shall survive me, and not otherwise, I give and bequeath to her the sum of 500 dollars, over and above the sum of 500 dollars which will be due to her agreeably to our marriage contract, also my silver watch, also the bed, bedstead and bedding in which I sleep, and also all cloth, yarn, clothing, furniture and household stuff made by her during our joint lives which may be on hand at my decease; she shall also have every thing which she brought to me at our marriage, and in addition hereto I give her five hogs, as many sheep as she brought to me, and three barrels of superfine wheat flour, or good wheat to that amount. These bequests shall be in bar and extinguishment of any claim or dower by her on my estate. The residue of my estate, both real and personal, shall be divided on the following principles : Inasmuch as my two sons, Adam Musselman and David Musselman, have already received what I believe to be each of their shares or fair proportions of my estate, they shall not receive any thing more of it. I have kept a book account of advancements made by me to my children respectively, to which reference must be had in making the following division, and so much as shall at my death stand charged against either of my hereafter named children, or the parent of my hereinafter named grandchildren, shall be taken and estimated as part of the share allotted to such child, and also in

[Musselman's Estate.]

part of the share allotted to such grandchild or grandchildren, and each child or grandchildren shall receive as much as shall make it, or them, equal to that one of the seven which has received most. The grandchildren to take per stirpes. This being done, and the several legatees being made equal therein, the whole residue of my estate, real and personal, shall be divided into seven shares which I give and devise as follows, viz: First, to the children of my son Joseph (who is now dead) and their heirs and assigns one share, and in case of the death of either of them under age, or without lawful issue, then such share to go to the survivor. Second, to my daughter Magdalena, widow of George Snider deceased, and to her heirs and assigns one share; but if my said daughter Magdalena should die before this will takes effect, then I will give and bequeath the same to all her children and to the lawful heirs of such as may die leaving issue, in equal shares. Third, to my son George and to his heirs and assigns one share, and in case of his death before this will takes effect, I give and bequeath the same to all his children and to the lawful heirs of such as may die leaving issue, in equal shares. Fourth, to my granddaughter Maria, only child of my son Christian (who is now dead) and to her husband George Musselman, Jun. and to the survivor of them and the heirs of the survivor, one share. Fifth, to my daughter Elizabeth Heikes, intermarried with George Heikes, and to her heirs and assigns, one share, and in case of her death before this will takes effect, I give and bequeath the same to all her children, and to the lawful heirs of such as may die leaving issue, in equal parts. Sixth, to my daughter Mary, intermarried with Lindsay Spotswood, and her heirs and assigns, one share, to have and to hold the same to her exclusive use and benefit; but if my said daughter Mary should die before this will takes effect, I give and bequeath the same to all her children, and to the lawful heirs of such as may die leaving issue, in equal shares. Seventh, to my daughter Barbara, intermarried with John Black, and to her heirs and assigns, one share, and in case of her death before this will takes effect, I give and bequeath the same to all her children, and to the lawful heirs of such as may die leaving issue, in equal shares.

" I do hereby authorise and empower my hereinafter named executors, or the survivor of them, (or if they should both die, or refuse to act, then such administrators as may be lawfully appointed to carry this will into effect), to sell, within six months after my decease or as soon thereafter as practicable, all my real estate wheresoever situate, at public sale, and to make a good and sufficient title in fee simple, to the purchaser or purchasers; and in the mean time, until such sale shall be completed, the said executors or administrators, shall superintend my real estate, lease it, receive the rents, issues and profits thereof, pay the taxes, make proper and necessary repairs and so on; and the said price, (on sale being made,) the nett produce of said rents, issues and profits, and the remainder of my personal estate, if any, shall be divided, as hereinbefore directed, among my

said children and grandchildren. Lastly, I do hereby nominate, constitute and appoint my friends Francis Diller and John Heikes, executors of this my last will and testament. In testimony whereof I have hereunto set my hand and seal the 7th day of March A. D. 1829.

"JACOB MUSSELMAN, [L. S.]."

This will was proved at the death of the testator, the 13th of January, 1834.

The facts set forth in this case are established by the deposition of Christian Humerich, William Irvine, Peter Ritner, the records of the court, and papers, book and receipts in the possession of the parties, any and all of which may be considered as a part of this case. The question for the opinion of this court is, whether upon the final settlement of the estate, Mrs Mary Spotswood shall be charged with the whole amount of the advancements made to her, or only with that part which is made subsequently to 1821, commencing with the item of 75 pounds, as appears by the book referred to in the will. If the court shall be of opinion in favour of Mary Spotswood the legatee, then decree to be made that she shall be charged with advancements to the amount of 299 dollars 50 cents, but if the court should be of opinion against the legatee, then decree that she be charged 900 dollars 83 cents.

Copy of the book referred to.—My daughter Mary, wife of Lindsay Spotswood, hath received from me the following advancements about the time of marriage, and afterwards in goods and cash for the following sums, to wit:

|  | £ | s. | d. |
|---|---|---|---|
| One cow, | 4 | 0 | 0 |
| Bed, &c., | 10 | 0 | 0 |
| Chest, | 3 | 0 | 0 |
| Spinning wheel, |  | 15 | 0 |
| Table, | 2 | 0 | 0 |
| Case and drawers, | 4 | 0 | 0 |
| In the year 1814 cash, | 37 | 10 | 0 |
| In the year 1818 cash, | 56 | 5 | 0 |
| In the fall of the same year the further sum of | 108 | 0 | 0 |
| Paid for furniture at constable sale with interest in bank, | 75 | 0 | 0 |
| Paid to Mary, wife of Lindsay Spotswood, 37 dollars 50 cents, | 14 | 1 | 3 |
| Paid to Mary, wife of L. Spotswood, 1824, | 7 | 10 | 0 |
| Paid to my daughter, wife of L. Spotswood, | 6 | 7 | 5 |
| 1827, Sept. 10, Mary Spotswood, my daughter, received from Wise & Uhler 20 dollars on my account. |  |  |  |
| 1829, in the month of August, gave my daughter Mary, wife of L. Spotswood, the further sum of, | 3 | 15 | 0 |
| In the fall of 1830, I gave to my daughter Mary, wife of L. Spotswood, in cash the further sum of, | 5 | 12 | 6 |

[Musselman's Estate.]

The court below (Reed, President) decreed in favour of the legatee.

*Watts,* for appellant.

*Biddle,* contra.

PER CURIAM.—The ruling purpose of the testator was to produce equality of distribution. He declares that "each child or grandchildren (the children of a deceased child) shall receive as much as shall make it, or them, equal to that one of the seven which has received most." Particular expressions that would stand in the way of this, are to be construed in subordination to it, or disregarded. The words, "so much as *at my death* shall stand charged," were not intended to give effect to an unfounded charge that would defeat his proclaimed intent. He was providing for actual circumstances not merely as they then stood, but as they might stand afterwards. His will was not made in expectation of immediate death; he lived five years beyond its date; and the final state of the entries might be expected to be determined, like the final accomplishment of all other testamentary purposes, by accident. He might, doubtless, have peremptorily directed the book, in whatever condition found at his death, to be taken for conclusive proof of the state of the accounts; but he has not done so, and we are not to intend that he meant to leave the adjustment of the shares of his offspring to the arbitrament of chance.

Decree affirmed.